## CENTRAL OF GEORGIA RAILWAY CO. *v.* EDWARDS.

1. An employee who has suffered a physical injury can not maintain therefor an action against his master merely because there may have been, on the part of the latter, negligent acts or omissions which, though they may to some extent have contributed to bringing about a dangerous situation in which the employee did an act from which the injury directly resulted, were not themselves the cause of the injury.

2. The only alleged act of negligence on the part of the defendant which could, in the present case, have been fairly found to have been a contributing cause of the injury, not having been shown to be in fact an act of negligence, it was error not to grant a nonsuit.

Argued March 21, — Decided July 14, 1900.

Action for damages. Before Judge Seabrook. Effingham superior court. May term, 1899.

*Lawton & Cunningham*, for plaintiff in error.
*Twiggs & Oliver*, contra.

LITTLE, J. It appeared from the petition of Edwards, who instituted an action to recover damages for a personal injury which he sustained, that he was an employee of the Central of Georgia Railway Company as brakeman on a freight-train at the time he received his injuries, which train consisted of an engine and about fifty freight-cars, besides one caboose. The plaintiff alleged that on the day he was injured the train was running forty minutes behind its schedule time, because of a defective driving-rod, and of the large number of cars which were attached to the engine; that, owing to its delayed schedule, the train upon which he was employed was forced to enter a siding at Brewer, a station on the Central road, to clear the main line for the passage of a passenger-train going in the same direction as the freight-train; that sufficient side-tracks for the passage of trains had not been provided, because the east switch of the side-track had been temporarily removed, and it was necessary for the freight-train to pass entirely beyond the west switch of the side-track and then back on to such siding; that as the freight-train was passing over the west switch, at about the speed of seven or eight miles per hour, the plaintiff was standing on top of a car about ten or twelve car-lengths behind the engine; that the conductor of the train was also standing on the top of a car a few car-lengths behind the plaintiff; that when the train was passing over the west switch, the conductor, wishing to put his train on the side-track as soon as possible, in order to avoid a collision with the passenger-train which was following, ordered the plaintiff to jump off the freight-train for the purpose of changing the switch as soon as it became clear; that in obedience to the order, the plaintiff (alleg-

84

ing that he was in the exercise of ordinary and reasonable care) proceeded to alight from the train, and, when he jumped from the ladder of the car on which he had been standing, was unable clearly to see the ground beneath him, and consequently his right foot, when he reached the ground, became fastened in the frog of the switch, such frog not having been blocked so as to prevent the foot of the plaintiff from becoming fastened therein, and the wheels of the car crushed and mangled his foot so that he never can have free use of the same, and his left leg was badly broken and is now one inch shorter than its natural length, and the ankle of the left foot is stiff and useless. · The acts of negligence on the part of the railroad company, its officers, and servants, are alleged to be as follows: first, in allowing the driving-rod and other machinery of the engine to get into a condition of disrepair, and thereby to cause the train to run behind its schedule time; second, in overloading with fifty cars the engine of said train, and thereby causing said train to run behind its schedule time; third, in not maintaining, and allowing to remain where it had been placed, the switch at the east end of said side-track, and thereby avoiding the necessity for the plaintiff to jump from the moving train, even though a collision was imminent; and in failing to protect said train so as to have avoided the imminence of a collision; fourth in maintaining and using a switch the frog of which was not properly blocked and guarded for the prevention of like casualties. It is alleged that there was in use among railway companies, known to the defendant, a simple device efficient and sufficient for the blocking and guarding of the switch frog, so that had the frog been blocked and guarded by such device the plaintiff would not have suffered the injuries described; and that the defendant knew, or by the exercise of ordinary care should have known, that the frog was not blocked and guarded. Plaintiff alleges that when he received such injuries he was entirely without fault, and in the exercise of ordinary and reasonable care.

The defendant answered, denying each and every allegation of every paragraph of the petition. The plaintiff, after having shown the fact that he was very seriously and permanently injured, testified, that he was employed as brakeman on the freight-train, which had about fifty cars, half of them loaded;

that such a great number of cars was unusual; that the train was late on account of the crank-pin of the driving-rod being hot; that Guyton was five miles from Brewer, where he was injured; that there was a side-track there, sufficient to have held the train; that Egypt was the passing point for the freight and passenger, but that in fact on that day these trains passed at Brewer, because the freight was overtaken by the passenger at Brewer; that when the freight-train came to Brewer the plaintiff was on top of a box-car about seven cars from the engine; that the conductor was on top of a box-car several car-lengths behind him; that he looked back to the conductor for signals, and when the train was near the west switch the conductor signaled plaintiff and pointed down to the switch and back to the passenger-train. Plaintiff looked and saw that the passenger-train was about the length of the freight-train behind. The conductor pointed as if he desired the plaintiff to get down at once on the west end of the side-track. That the east switch had been taken up, and had it been there the train would have stopped and pulled in, and it would not then have been the duty of the plaintiff to change the switch. At the time he jumped he thought he had passed the switch. The frog was not blocked at the time of his injury, but afterwards was blocked with wood, so that it was impossible for a person to get his foot into the frog. This was the first time that he ever remembered to have seen one of the switches on the Central Railroad blocked that way, but all the switches which he has seen since are blocked. The side-track also, after his injury, was put in perfect condition, and if a switch had been on the east end of the side-track on the day his injury occurred, the train would have gone into the side-track over it, and he would not have been injured. Before he was hurt he thought the frogs were in good condition and not dangerous, and did not know that they were liable to catch his foot. To ascertain that they were so, he would have had to make an examination. For this he had no time, and it was not his business to examine the switches. Plaintiff had been running on the railroad for five years, and had seen the switch where he was injured perhaps as many as three times a week. Plaintiff had seen one switch blocked with steel on the Plant System before he was injured;

had never seen another; had never heard of a blocked frog before he saw that on the Plant System of railroads. At the time he jumped from the car he did not know that he was jumping in the frog, because he could not see it. He looked as best he could under the circumstances. At the time plaintiff jumped from the train, it was moving six or seven miles an hour; he could not see anything that was under him, on account of the dust. His object was to get off as quickly as possible, and he trusted to luck. His object in getting off quickly was to avoid a collision, and put the switch in order for the freight-train to back in on the side-track. If he had seen the hole or the frog, he would have gotten off if he could, but would not have jumped into them. The switch-blocks are generally used on the Plant System, and are effective in keeping one's foot out of a frog. Witness did not know that the blocked frogs were used all over the Central Railroad at that time; had seen several. By another witness the plaintiff proved that an unblocked frog was dangerous; that a man could get his foot hung in it. By this witness it was proved that he had seen two or three of these blocked frogs on the Central Railroad. Another witness for the plaintiff testified that he had worked for the Plant System and another railroad for seventeen years as locomotive engineer, that it was a part of his business to observe switches and frogs, and that the Plant System had been using several kinds of frogs in the past five years. These will prevent the foot of a man from getting caught in the frog.

A number of the rules governing employees of the Central Railway Co. were introduced; and the plaintiff closed his case. At the conclusion of the plaintiff's evidence, the defendant moved the court to grant a nonsuit. The motion being overruled, the defendant excepted pendente lite, and had his bill of exceptions certified and put on record. The case proceeded to trial, and a verdict was rendered for the plaintiff. The defendant made a motion for new trial on several grounds, which was overruled, and it excepted, assigning error to the ruling of the court in refusing to grant the nonsuit, and in overruling its motion for a new trial.

We think the court erred in overruling the motion for a nonsuit. Under the allegations made in the petition, the neg-

ligence of which the plaintiff complained that the railroad
company by its officers and servants was guilty consisted in
the following acts: (1) in allowing the machinery of the loco-
motive which was pulling the train on which he was employed
to get out of order, and so cause the train to run behind its
schedule time; (2) in overloading the engine, thus causing
it to run behind its schedule time; (3) in not maintaining and
allowing to remain a switch on the east end of the side-track
at Brewer, so as to avoid the necessity which caused the plain-
tiff to jump from the moving train in order to set a switch at
the west end of the side-track; (4) in maintaining and using
a switch the frog of which was not properly blocked and guarded.
Neither the fact that the machinery of the locomotive was out
of order, nor that the engine had attached to it too many cars,
nor the fact that there was no switch at the east end of the
side-track in Brewer, was the proximate cause of the injury
which the plaintiff sustained. If these were causes at all, they
were too remote as a basis for a recovery. Without entering
into a discussion of the doctrine of proximate and remote causes
of injury, it is only necessary to refer to the provisions of our
Civil Code, §§ 3912, 3913, declaring the rule on this subject.
In the first of these it is declared that if the damages are only
the imaginary or possible result of the tortious act, or if other
and contingent circumstances preponderate largely in causing
the injuries, such damages are too remote to be the basis of re-
covery against the wrong-doer; and in the latter, the rule is
stated to be, that damages which are the legal and natural re-
sult of the act done, though contingent to some extent, are not
too remote to be recovered; but that damages which are trace-
able to the act, but not its legal or material consequence, are
too remote and contingent. The reasoning by which it is
sought to charge the defendant company with the negligence
which caused the injury to the plaintiff must be as follows: If
the crank-pin had not been allowed to get too hot, the freight-
train upon which the plaintiff was employed would have been
able to make its schedule time, and if it had made its schedule
time, then there would have been no imminence of a collision at
Brewer, and if there had been no imminence of a collision there
would have been no necessity on the part of the plaintiff to jump

from the moving train in order to set the switch; but the crank-pin was allowed to get too hot to make the schedule time, and there was imminence of a collision, and because of such imminence the plaintiff jumped from the car, and as he was injured in such jump, he was entitled to recover, because the crank-pin was allowed to get too hot. Or, take the other proposition, that if there had been a switch on the east end of the side-track at Brewer, the train would have entered said side-track, and it would have become the duty of another brakeman to set such switch, and therefore there would not have been any necessity on the part of the plaintiff to jump from the moving train, and consequently he would not have been injured.

However logical these deductions may be, they fail to establish a right of recovery in the plaintiff for the injuries which undoubtedly he sustained. To constitute an actionable tort there must be damage to the plaintiff and negligence by the defendant causing the injury. *Central Railroad* v. *Freeman*, 75 *Ga.* 331; *Mayor and Council of Macon* v. *Dykes*, 103 *Ga.* 847. See also *Central of Georgia Railway Co.* v. *Price*, 106 *Ga.* 176, and numerous cases cited in the opinion on page 178. The direct and proximate cause of the injury which the plaintiff sustained was his jumping from the train; and if he is entitled to recover damages from the defendant company therefor, it is because of some negligence on the part of said company which caused the jump from which the injury resulted, or negligence in not protecting the place where in fact he did jump. As we have seen, it is not charged in the petition that the railroad company was, through its conductor, negligent in directing the plaintiff to jump from the car at the time he did. Therefore, discarding these remote causes so particularly set out in the petition, in themselves not giving to the plaintiff a right of action, there must remain but one question, and that is, whether or not the company was negligent in not protecting or blocking the frog in which the foot of the plaintiff became fastened, and from which fastening his serious injury was a consequence. By the Civil Code, § 2611, it is declared that the master is bound to exercise ordinary care in furnishing machinery equal in kind to that in general use, and reasonably safe for all persons who operate it with ordinary care and diligence. In the case of

*Whatley* v. *Block*, 95 *Ga.* 15, our present Chief Justice quoted approvingly the rule which governs this subject, taken from the 14 Am. & Eng. Enc. L. 903, 904, in the following words: "A custom with reference to the adoption of certain safeguards in a given business must be so general that it is presumed that the defendant had knowledge of it, in order to make him liable for neglecting to provide the same." No general custom of any character was shown to exist in relation to blocking the frogs of a switch on a railroad-track, either at the time the plaintiff sustained his injuries, or at the time of the trial. The evidence of the plaintiff on this subject only went to the extent of showing that, since he had sustained his injuries, certain particular frogs on the Central Railroad had been blocked, and that on the Plant System of railroads there existed a number of different kinds of blocks to such frogs. But the master, while bound to exercise due care in protecting his servant in the use of these frogs, can not be bound to provide a particular contrivance until it is shown primarily that such a contrivance is a safeguard, to some extent at least, against such injuries, and that it is a general custom among other persons engaged in the same character of business to employ them. The evidence entirely failed to show that the employment of these blocks was even a custom among railroads. Whether they are or not we do not know; and while the evidence of the plaintiff contained in this record is sufficient to show that they are a protection, it does not show that they were or are in such general use by the railroads of the country as to make the railroad company in this case responsible for their non-use; and inasmuch as this general custom was not shown, and this being the only point set out in the petition as showing negligence on which a recovery could have been had if satisfactorily proved, it follows that a nonsuit should have been awarded. Because of so ruling, it is unnecessary to pass on the error alleged to have been committed in overruling the motion for a new trial.

*Judgment reversed. All the Justices concurring.*