## SOUTHERN RAILWAY COMPANY *v.* WEBB.

1. While the general rule is that if, subsequently to an original wrongful or negligent act, a new cause has intervened, of itself sufficient to stand as the cause of the misfortune, the former must be considered as too remote, still if the character of the intervening act claimed to break the connection between the original wrongful act and the subsequent injury was such that its probable or natural consequences could reasonably have been anticipated, apprehended, or foreseen by the original wrong-doer, the causal connection is not broken, and the original wrong-doer is responsible for all of the consequences resulting from the intervening act.

2. There was no error in any of the rulings complained of, which required the granting of a new trial. The evidence authorized the verdict, and the court did not err in refusing to grant a new trial.

Argued June 30, — Decided August 7, 1902.

Case. Before Judge Eve. City court of Richmond county. January 15, 1902.

*Joseph B. & Bryan Cumming,* for plaintiff in error, cited, beside cases referred to in the opinion: 101 *Ga.* 747; 85 Pa. St. 293 – 298; 7 Wall. 44; 7 So. Rep. 648; 16 Am. & Eng. Enc. L. 444 – 5; 10 Am. & Eng. R. Cas. 749.

*Henry C. Hammond* and *C. Henry Cohen,* contra, cited, in addition to authorities given in the opinion: 42 Md. 117; 14 Allen, 296; 49 Cal. 87; 75 Ind. 166; 118 Mass. 251; 99 N. Y. 158; 75 Ill. 93; 43 N. J. L. 459; 36 N. Y. 39; 59 *Ga.* 544; 46 N. J. L. 7; 13 Fed. 591; 63 Fed. 394; 4 Cush. 400; 11 Allen, 500; 11 Atl. 619; 1 N. E. 608, 613; 10 N. E. 896; 22 N. E. 14; 20 N. W. 320; 38 N. Y. 260; 53 Pac. 651; 94 U. S. 469; 144 U.

S. 808; 60 Conn. 293; 46 Minn. 39; 25 App. 521; 2 Thomp. Neg. 1179; 2 Wood's Ry. L. 1254; 5 Am. & Eng. Enc. L. 625, 629; 8 Tex. Civ. App. 71; 47 Atl. 391; 1 Am. Neg. R. 416, 664; 2 Id. 195; 3 Id. 453; 5 Id. 117; 7 Id. 51, 62; 110 *Ga.* 665–6; 111 *Ga.* 852; 79 *Ga.* 1, 7; 14 Enc. Pl. & Pr. 345.

COBB, J.  This was an action by the father of John W. Webb against the Southern Railway Company, for damages alleged to have been sustained by the plaintiff on account of the homicide of his son.  The trial resulted in a verdict in favor of the plaintiff, and the defendant complains that the court erred in refusing to grant it a new trial.

1. The petition alleged that John W. Webb was a passenger on one of the trains of the defendant; that while in one of the cars of the train, in the exercise of all ordinary care and diligence, and just as he was about to take a seat near the rear door of the car, the train was negligently, suddenly, forcibly and with great violence jerked, jarred, and jolted, and as a result Webb was suddenly and without fault on his part thrown through the rear door of the car, and fell across the platform at the end of the car on to the track on a bridge over which the train was passing at the time the jolt took place; that he was stunned by the fall and rendered insensible; and that, while upon the track in a stunned, insensible, and injured condition and unable to walk or protect himself, he was negligently run over and killed by another engine passing along the track over the bridge.  There was evidence authorizing the jury to find that Webb was a passenger upon a train of the defendant, and that while this train was going over a bridge a sudden and violent jolt occurred, sufficient to throw one from his feet who was standing in the train, and which had the effect of jostling the passengers and throwing down bundles from the racks of the car; that Webb was seen upon the train just before this jolt occurred, and he was then near the rear door of the car; that he was not seen afterwards by any one who was in the car; that shortly after the train upon which he was last seen had passed over the bridge, an engine belonging to the Georgia Railroad Company ran over and killed Webb, who was lying across the track on the bridge just at the point where the train was when the jolt occurred; that while the defendant had no control over this engine, the engines of the Georgia Railroad Company had a right to use this track, and it was known to the

defendant that the engines of that company might pass along the track at any time when it was not otherwise in use. While the evidence was conflicting as to some of the points above referred to, there was ample evidence authorizing the jury to find all of the facts above stated. It is contended by the counsel for the plaintiff that from this evidence the jury could have inferred that Webb was thrown from the rear door of the car upon the track and was there in a stunned condition at the time the engine ran over him. Counsel for the railway company contends that the jury were not authorized to draw any such inferences, and that the plaintiff has failed to establish the case made in the petition; but that even if this position is not correct and the jury were authorized to infer, from the facts above referred to, that Webb was thrown from the inside of the car through the rear door of the same upon the track and stunned by the fall, still the plaintiff could not recover, for the reason that the negligence of the defendant which resulted in Webb's being hurled upon the track was not the proximate cause of his death, but that the immediate cause of his death was the intervention of another independent agency, that is, the running of the engine of the Georgia Railroad Company upon the tracks at that point. As we have reached the conclusion, for reasons which will be hereafter stated, that the jury were authorized to infer, from the facts above detailed, that Webb was negligently thrown from the inside of the car through the rear door upon the track, it becomes necessary to determine whether this negligence on the part of the defendant was so far the proximate cause of the death of Webb that the defendant would be liable, notwithstanding the death was not actually brought about by the fall from the train, but by the running of the engine which ran over and killed him while he was lying in an insensible condition upon the track. See, in this connection, Hopkins' L. Pers. Inj. §§ 14, 15, 16. " No branch of the subject of personal injuries presents greater difficulty than the determination of liability for a specific loss, with reference to its naturalness and proximity as a consequence of the wrongful act complained of." Watson's Personal Injuries, § 25. As was said by Elbert, J., in Pullman Palace Car Co. *v.* Barker, 4 Colo. 344, " What is the proximate cause of an injury in a legal sense is often an embarrassing question, involved in metaphysical distinctions and subtleties difficult of satisfactory application in the varied and prac-.

tical affairs of life." Chief Justice Shaw, in Marble v. Worcester, 4 Gray, 397, said: "The whole doctrine of causation, considered in itself metaphysically, is of profound difficulty, even if it may not be said of mystery." In Scott v. Hunter, 46 Penn. St. 195, Strong, J., said: "Indeed, it is impossible by any general rule to draw a line between those injurious causes of damage which the law regards as sufficiently proximate, and those which are too remote to be the foundation of an action." In Smith v. Telegraph Co., 83 Ky. 114, Judge Holt remarked: "The line between proximate and remote damages is exceedingly shadowy; so much so, that the one fades away into the other, rendering it often very difficult to determine whether there is such a connection between the wrong alleged and the resulting injury as to place them, in contemplation of law, in the relation of cause and effect." It has been said that notwithstanding the maze of doubt and difficulty with which this subject seems to be involved, still it is possible to take a more practical and simpler view than the observations of learned jurists would indicate; that the practical administration of justice prefers to disregard the intricacies of metaphysical distinctions and subtleties of causation, and to hold that the inquiry as to natural and proximate cause and consequence is to be answered in accordance with common sense and common understanding. Watson's Pers. Inj. § 28. From the author just cited we quote the following:

"A natural consequence is one which has followed from the original act complained of, in the usual, ordinary, and experienced course of events. A result, therefore, which might reasonably have been anticipated or expected. Natural consequences, however, do not necessarily include all such as upon a calculation of chances would be found possible of occurrence, or such as extreme prudence might anticipate, but only those which ensue from the original act without any such extraordinary coincidence or conjunction of circumstances as that the usual course of nature should seem to have been departed from." § 33.

"From the very outset, the practical distinction between causes and consequences should be borne in mind in this particular: a consequence of an original cause may, in turn, become the cause of succeeding consequences. But such a cause should not, manifestly, be regarded as an intervening cause which will relieve from

liability the author of the original cause, but rather as only a consequence along with the other consequences. A tortious act may have several consequences, concurrent or successive, for all of which the first tort-feasor is responsible. It is not intervening *consequences*, but intervening *causes* which relieve. The test is to be found, it has been said, not in the number of intervening events or agents, but in their character, and in the natural and probable connection between the wrong done and in the injurious consequence. So long as it affirmatively appears that the mischief is attributable to the original wrong as a result which might reasonably have been foreseen as probable, legal liability continues." § 58.

" Some authorities have formulated rules on this subject designed for general application, as that the defendant is not responsible where there has intervened the wilful wrong of a third person, or *is* liable where such act is of a negligent character merely. But the better doctrine is believed to be that whether or not the intervening act of a third person will render the earlier act too remote depends, simply, upon whether the concurrence of such intervening act might reasonably have been anticipated by the defendant." § 71.

In Pittsburgh Railway Co. *v.* Taylor, 104 Penn. St. 315, Mr. Justice Paxson said: " In determining what is proximate cause the true rule is, that the injury must be the natural and probable consequence of the negligence, such a consequence as under the surrounding circumstances of the case might and ought to have been foreseen by the wrong-doer as likely to flow from his act." In Lane *v.* Atlantic Works, 111 Mass. 139, Colt, J., said: " The injury must be the direct result of the misconduct charged; but it will not be considered too remote if, according to the usual experience of mankind, the result ought to have been apprehended. The act of a third person, intervening and contributing a condition necessary to the injurious effect of the original negligence, will not excuse the first wrong-doer, if such act ought to have been foreseen. The original negligence still remains a culpable and direct cause of the injury. The test is to be found in the probable injurious consequences which were to be anticipated, not in the number of subsequent events and agencies which might arise." In Seale *v.* Ry. Co., 65 Tex. 278, Chief Justice Willie said: " What character of intervening act will break the causal connection between the original

wrongful act and the subsequent injury is also left in doubt by the decisions. If the intervening cause and its probable or reasonable consequences be such as could reasonably have been anticipated by the original wrong-doer, the current of authority seems to be that the connection is not broken." See also Col. Mtg. Co. v. Rees (Col.), 42 Pac. 42, 45 ; 21 Am. & Eng. Enc. L. (2d ed.) 486 et seq.

Treating it as established in the present case that Webb was upon the track of the defendant in an insensible condition as a result of the negligence of the defendant, is it reasonable or unreasonable to hold that the defendant should have apprehended that a person in this condition, in such a place, might be injured or killed by the running of an engine upon the track ? Was the defendant bound to anticipate that injury or death might result to a person in such a condition in such a place ? The track was under the control of the defendant; and if Webb had been killed by an engine of the defendant which came along the track after the train from which Webb was thrown had passed, the defendant would have been liable, although the employees in charge of the engine had been wholly free from negligence. *South Carolina Railroad Company* v. *Nix,* 68 *Ga.* 572. In that case Mr. Chief Justice Jackson said: " Suppose there had been a prosecution for murder, who would be found guilty thereof, the conductor of the train who did the deed of throwing him off and under, or the conductor of the other train who ran unconsciously over him ? Clearly he who did the intentionally wrongful act, and whose act caused his death." The principle upon which the ruling in the *Nix* case is founded is that a railway company is bound to know that its tracks may be used at any time by the engines and trains of the company, and is bound to anticipate and apprehend any consequence that may result to one who, on account of its negligence, is left in a condition in which and in a place where he is liable to be injured by the running of such trains. If a railway company is bound to anticipate and apprehend that one left in a helpless condition in a perilous place upon its tracks through its negligence may be injured by one of its own engines or trains running thereon, is it not equally bound to so anticipate and apprehend any injury which might result to such a person from an engine of another company which the first company knew had a right to and did actually use the tracks from time to time ? It would indeed bring about a curious result if the defendant would

be liable in such a case only when the second engine or train was owned by it.   It must be kept in mind that in such cases no negligence is claimed against the persons in charge of the second train or engine.   They are blameless.   If there is any liability, it results from the negligence of those in charge of the train which left the person killed in a perilous situation upon the track.   It would seem that ownership of the second engine or train would be entirely immaterial, and the only question to be considered would be whether the first company knew, or ought to have known, that the second engine or train, no matter by whom owned, had a right to or did actually from time to time use the track at the place at which the person was killed.

When a railway company negligently leaves a person upon its track in a helpless condition, it will certainly be held liable for any injurious consequences which may result to such a person growing out of the running of trains along the track, without regard to the ownership of such trains, if the company knew or ought to have apprehended that the trains would pass along the track at that point.   The present case is very similar to the case of Byrne *v.* Wilson, 15 Ir. Com. Law Rep. 332.   That was a case brought in 1862, under Lord Campbell's act, by William Byrne, as administrator of Mary Byrne, against a person who was alleged to be the proprietor of certain omnibuses and as such engaged in the business of a common carrier of passengers.   Mary Byrne was a passenger in one of the omnibuses, and through the negligence of the servants of the defendant the omnibus was precipitated into the lock of a canal, and Mary Byrne was there in an insensible condition, when the keeper of the lock turned the water therein, and she was drowned.   It was held that although the death of Mary Byrne was not caused immediately by the act of the defendant, it was such a consequential result of that act as entitled her representative to maintain an action.   Lefroy, Chief Justice, said (p. 340): " It was not the negligence of the defendant that was the immediate occasion of her death; but it was the negligence of the defendant that put her into a position by which she lost her life, as a consequential injury resulting from that negligence; and although that death was not caused immediately by the act of the defendant, nor was the immediate and instantaneous result of his negligence, yet it was the consequential result of the defendant's act,

and enables her representative to maintain this action.    The defendant knew that the Georgia Railroad Company had a right to use these tracks.    It also knew that it might use them at any time.    When, therefore, Webb was negligently thrown upon the tracks and left there in a helpless condition, the defendant was bound to apprehend and anticipate that injurious consequences would likely result to him from the use of the track by the servants and agents of the Georgia Railroad Company in charge of its engines and trains.    This being so, the negligence of the defendant which resulted in leaving Webb helpless upon its tracks was in law the proximate cause of his death, notwithstanding his death was actually brought about by another agency.

We do not think this ruling is in conflict with any of the cases cited in the brief of counsel for the plaintiff in error.    In *Perry* v. *Railroad Co.*, 66 *Ga.* 746, the plaintiff had deposited his luggage in a car of the defendant, intending to go upon the train as a passenger, and left the car and engaged in conversation with another person in the depot.    While so engaged his attention was called to the fact that the train had moved off and he ran until he reached the end of the car-shed.    While passing through the gateway of the car-shed he came in contact with the engine of another company, which was coming into the shed, and as a consequence received serious injuries.    It was held that the negligence of the railroad company in starting its train without giving a signal was not the proximate cause of the injury which the plaintiff subsequently received by running against the engine of another train in his effort to catch the defendant's train.    The defendant could not have foreseen, nor was it bound to anticipate or apprehend, that, as a result of its negligence in starting its train without a signal, a passenger would, in attempting to catch the train, run against the engine of another train and receive serious injuries.    In the case of *Mayor* v. *Dykes*, 103 *Ga.* 847, a street-car company had negligently constructed its track so that the rails were above the surface of the street.    The plaintiff, while driving a horse attached to a two-wheel road-cart, attempted to drive across the track at an angle of about forty-five degrees; the wheels of his cart came in contact with the iron rails of the track, slipped along the track and made a scraping noise, which caused the horse to take fright and run away.    The cart collided with a wagon, and plaintiff was thrown to the ground

and seriously injured.   Although the street-car company may have been negligent in the way it constructed its track, it certainly could not have foreseen that as a result of this negligence a scraping noise would be made, and that this noise would frighten a horse and the horse would run away, and the vehicle to which he was hitched would collide with a wagon and the plaintiff would as a result be injured.   Of course, if the car had been overturned as a result of the tracks being built too high above the surface of the street, and injury had resulted from an accident of this character, the case would have been different.

In *Central Ry. Co.* v. *Price*, 106 *Ga.* 176, the plaintiff was a passenger who had been carried wrongfully beyond her station and when this fact was discovered she was requested to alight at another station, which she did, and was carried to a hotel by the conductor.   While at the hotel a lamp in her room exploded and as a consequence she sustained damage.   It was held that the railway company was not liable for the injury thus sustained.   The defendant could not have foreseen, apprehended, or anticipated that the plaintiff would suffer injuries of the character received by her at the hotel; and hence its negligent act in carrying her beyond her station could not be said to be the proximate cause of the injuries thus received.   In *Central Ry. Co.* v. *Edwards*, 111 *Ga.* 528, the plaintiff was a brakeman on a freight-train, and was ordered by the conductor to jump off the train for the purpose of changing the switch.   In obedience to this order the plaintiff jumped from the car on which he was standing, and being unable to see the ground beneath him, his right foot was caught in a frog of the switch, the frog not having been blocked so as to prevent such an accident, and the wheels of the car ran over and crushed his foot.   The distinction between that case and the present will be apparent when the following language of Mr. Justice Little in the opinion in that case is considered : " The direct and proximate cause of the injury which the plaintiff sustained was his jumping from the train; and if he is entitled to recover damages from the defendant company therefor, it is because of some negligence on the part of said company which caused the jump from which the injury resulted, or negligence in not protecting the place where in fact he did jump.   As we have seen, it is not charged in the petition that the railroad company was, through its conductor, negligent in directing the plaintiff to

jump from the car at the time he did." It was held that the failure to block the switch was not an act of negligence.

In the determination of the question just presented we have been very much aided by the carefully prepared brief of counsel for the defendant in error. The brief shows not only laborious research but ability and power of discrimination, and we take occasion to express our appreciation of the valuable aid thus brought to us in the decision of this puzzling question.

2. The motion for a new trial contains numerous assignments of error on rulings upon the admissibility of evidence. Several grounds complain that the court erred in allowing testimony to be offered for the purpose of impeachment, which related to matters which were immaterial and irrelevant. While the judge seems to have permitted the cross-examination of different witnesses, laying the foundation for impeachment, to take a very wide range, we can not say that any evidence he admitted was altogether irrelevant. But even if it was, the error thus committed would not be sufficient to have required the granting of a new trial. The defendant offered in evidence a chain of title showing that the South Carolina & Georgia Railroad Company was the proprietor of the tracks at the point where the injury occurred and the yards adjacent thereto, and also offered a contract between the City Council of Augusta and this railroad company, the purpose in offering this evidence being to show that the engine of the Georgia Railroad Company was upon the tracks at the point where Webb was injured, not by permission of the defendant, but in its own right under a contract made with the city council and the predecessor in title of the South Carolina & Georgia Railroad Company. This evidence was rejected, and error is assigned upon this ruling. It was immaterial who owned the tracks and the yards adjacent thereto. The defendant was shown to be in control of the tracks at the place where the injury occurred and also the adjacent yards in the State of South Carolina. It was immaterial whether the Georgia Railroad Company ran its engine over the track by its own right or by permission of the defendant. It did not matter under whose authority the engine was operated upon the track. The only material question was whether the defendant knew or should have known that the Georgia Railroad Company was in the habit of using the tracks at that point. There was evidence au-

thorizing the jury to find that such was the case.  What has been just said disposes of that ground of the motion which complains that the court erred in allowing a witness, who was an employee in charge of the Georgia Railroad engine, to testify, in effect, that the engine was on the tracks by permission of the defendant.  Even if the judge committed any error in any of the rulings complained of in the motion for a new trial, we do not think, after a careful examination of the motion for a new trial and the entire record in the case, that there should be a reversal of the judgment for any of the reasons assigned in the motion.

It remains only to dispose of that assignment of error which complains that the verdict was not warranted by the evidence.  It was earnestly argued by counsel for the plaintiff in error that there was no evidence authorizing a finding for the plaintiff.  It was contended that, as the petition alleged that Webb was thrown through the rear door of the car across the platform at the end of the car and on to the tracks and as a result was stunned and rendered insensible, the plaintiff can not recover upon a general presumption of negligence against the company, but his recovery must be based upon evidence authorizing the jury to find that he was injured in the manner described in the petition, that is, by being thrown from the inside of the car through the door across the platform on to the tracks.  Under the view we have taken of the case it is unnecessary to determine whether a recovery could be had if the evidence failed to show to the satisfaction of the jury that Webb was thrown from the car in the manner described in the petition.  There was abundant evidence authorizing the jury to find that Webb was upon the train as a passenger, and that while he was upon the train there was a jolt of the train which was sudden, unusual, and violent, its character being such that the passengers were jostled in their seats, bundles were thrown from the seats and racks, and a person in the aisle of the car would probably have been thrown from his feet.  There was no one who saw Webb actually thrown through the door to the platform and upon the track.  The last that was seen of him, which was just before the jolt came, he was making his way towards the rear of the car, looking for a seat, and had reached a point near the door of the car.  Nothing more was seen of him until he was found in a mangled condition by the employees in charge of the railroad engine which

had run over him.　All of the evidence in the record which bears upon the question as to whether Webb was thrown from the car as described in the petition is contained in the testimony of the witness Shinall, and we quote the exact language of this testimony: "We got on at Broad street together.　John Webb got on the first step between the coaches, and I got on the next one, and he was on the platform ; and I turned and went towards the back end of the car, and had a couple of bundles in my hand.　As I was going along, Mr. Pardue asked me what I was doing there, and I sat on the side of the car and was talking to him when John Webb came through the train and passed by us, and went on toward the rear of the train.　At or about that time the train stopped inside of the bridge all at once.　I mean by stopping all at once, it was going along ten or fifteen miles an hour, and all at once it stopped.　It was a hard jerk ; it would have jerked a man down if he had been standing on his feet.　That occurred right immediately after I saw Mr. Webb standing up near the rear of the train ; it was not more than a minute or something like that.　I was talking to Mr. Pardue, and then the jerk come, and people was making remarks about the jerk coming, and still I did not pay no attention to him ; I did not know anything was the matter with him at that time.　I did not find out for certain what had become of him until the next morning.　After I got off at Bath I asked for him, but nobody had seen him.　I don't think I changed my position on that seat after I saw him.　It is just a short run from Augusta to Bath, and I sat there talking to Mr. Pardue.　The reason I didn't look around for John Webb, I was talking and never put my mind on it.　I thought may be he was sitting behind us."

To sustain the verdict it is not necessary for us to hold that this testimony of Shinall required a finding that Webb was hurled through the rear door of the car by the jerk of the train.　If the jury could legitimately infer from this testimony that such was the case, we have no right to disturb their verdict after it has been approved by the trial judge.　The able and learned counsel for the plaintiff in error presented the case to us in such a way that if we had been sitting as a jury, or even as a court of appeals, with power to pass upon the weight of testimony, we would probably have decided with him at the close of his argument.　It is, however, not within our province to pass upon cases like a jury, nor have we any

desire to do so. Our authority extends simply to determining whether, under a given state of facts, the jury could legitimately arrive at a given result. While we do not think it is probable that Webb was thrown through the door of the car in the manner claimed, still it is possible that this took place, and under the evidence disclosed by the record we think the jury were authorized to so find. There is some mystery about the case, but, as was said by Mr. Chief Justice Bleckley, in *Central Railroad Co.* v. *Rouse,* 77 *Ga.* 407, "juries have no more important function than to solve mysteries." The jury have solved this mystery to their own satisfaction. The trial judge has approved their solution, and we have no authority to interfere. The judgment must be

*Affirmed. All the Justices concurring, except Lewis, J., absent.*