21616. WESTERN & ATLANTIC RAILROAD *v.* ROBERSON.

DECIDED FEBRUARY 16, 1932. REHEARING DENIED MARCH 2, 1932.

*Tye, Thomson & Tye,* for plaintiff in error.
*Hewlett & Dennis,* contra.

LUKE, J. Wilce D. Roberson brought an action against the Western and Atlantic Railroad to recover damages for a personal

injury. The jury returned a verdict for the plaintiff for $2500. The defendant excepts to the refusal of a new trial.

The case made by the plaintiff's petition is substantially as follows: On or about August 2, 1929, the plaintiff was an employee of the defendant company, his duties being to repair cars. On that date the plaintiff and a fellow employee, one Thomas, were engaged in putting an end-sill in a certain stock-car. Plaintiff had "jacked up centre-sills, and while so doing was at the end of the car with his back towards said Thomas." Said Thomas, unknown to petitioner, endeavored to prize up the end-sill, and in so doing made use of a wooden horse, the face or top of which was a two-inch by four-inch timber, and on top of that he had placed a wooden block of approximate dimensions of 8 x 9 x 30 inches, over which he was using a wheel-stick to prize up said end-sill. When Thomas "began to prize, the block slipped off of said horse and was hurled with great force downwards towards . . petitioner, striking him upon his foot. Defendant gave to petitioner no warning . . of its intention to raise said end-sill by the method aforesaid:" and "petitioner did not know, and did not have equal means with the master of knowing, that the said Thomas would undertake to raise said end-sill by the method aforesaid, because . . petitioner was at all times busily engaged in doing his work with his back either wholly or partially turned towards the said Thomas. Petitioner's right foot and all the nerves . . were severely mashed, bruised, and contused . .; the second toe was severely mashed, broken and lacerated; the distal phalanx of his big toe, on account of said injuries, was removed, and petitioner has been permanently crippled by reason thereof; he has suffered the greatest mental and physical pain and agony and sustained a severe shock to his entire nervous system. The act of said Thomas aforesaid was unusual and out of the ordinary and exceedingly dangerous, for that the top of said wooden horse was too narrow to support the block aforesaid, and the said Thomas should in the exercise of ordinary care have known the same, and he should likewise have known that the use of said Block under said circumstances was a menace to petitioner who was standing three or four feet distant. At said time .petitioner was a strong . . man of the age of forty-eight years, earning and capable of earning the sum of $5.93 per day. He has been totally incapacitated since the time of his injury and will be for a

great length of time to come, the exact duration of which he can not give." Plaintiff "was free from fault and blame, was in the exercise of ordinary care, and the injuries complained of were the direct and proximate result of the negligence of the defendant in the particulars hereinafter set forth." Defendant was negligent as follows: (*a*) "In placing said block upon a much narrower base and exerting great pressure thereupon by means of the wheel-stick aforesaid, at a time when petitioner was standing near by." (*b*) "In employing said horse, block and stick for the purpose of raising said end-sill, at a time and place when injury was likely to be done to petitioner." (*c*) "In furnishing to your petitioner, as a safe place in which to work, a place fraught with the hazard and dangers aforesaid." (*d*) "In failing to give petitioner any warning of its intention to raise said end-sill by the method aforesaid."

Designating the end of said car which was nearest Marietta as the north end and the end nearest Atlanta as the south end, plaintiff and his fellow car-repairer, A. L. Thomas, were working at the north end of the car. The end-sill weighs approximately two hundred pounds, is located over the drawhead, and extends the width of the car. The side-sill extends the length of the car, and is joined to the end-sill by a tenon and mortise, the tenon being on the side-sill, and the mortise in the end-sill. Six truss-rods extending the length of the car, and through the end-sills, are secured by nuts screwed on the ends of the truss-rods. The new end-sill which was being installed by the plaintiff and Thomas had been raised to a position where the tenon on the side-sill was about one inch above the mortise on the end-sill, and it was necessary to further elevate the end-sill so that it could be mortised to the side-sill. Plaintiff was standing facing the end of said car, and near the corner thereof. Thomas procured a "work-horse" and placed it practically in line with the end-sill of said car, and very near the said end-sill. On top of this "work-horse" he placed a block of wood, the base of which was much wider than the top of the bench on which it was resting. On top of this block of wood Thomas placed a "wheel-stick." He then placed the end of the "wheel-stick" under the end of said end-sill, and, facing towards plaintiff, prized the end-sill to a position where it could be mortised to the side-sill. Plaintiff, standing at the corner of said car, fac-

ing the car, turned a tap on a truss-rod with a long heavy wrench, in order to force the tenon of the side-sill into the mortise of the end-sill. At this juncture the said block of wood became dislodged and was hurled with great force against the plaintiff's foot, seriously injuring it.

The gist of the plaintiff's case is that he was engrossed with his work at the end of the car and had his head turned and knew nothing about Thomas assembling said prize, or the manner in which said end-sill was being raised in position; that the customary, proper, and safe way to raise an end-sill was with a jack; and that the method employed by Thomas was unnecessary, improper, and dangerous. On the other hand, the defendant adduced evidence to the effect that the plaintiff knew that said end-sill was being raised as it was, and that he either saw, or by the exercise of the slightest diligence (merely turning his head slightly) could have seen, the entire operation of assembling the prize and using it in the manner indicated. Just how far the plaintiff was standing from the corner of the car, and how near he was to Thomas, when he was hurt can not be precisely stated, but it can be said with certainty that the plaintiff and Thomas were only a few feet apart, and that the plaintiff was standing very near the prize.

The foregoing is only a scant outline of the main features of the case as shown by the brief of evidence. A careful study of the voluminous record in the case satisfies us, however, that the evidence supports the verdict, and that the general grounds of the motion for a new trial were properly overruled.

Ground 4 complains that the court refused to allow one of defendant's witnesses to testify whether or not four men could lift and put in place the end-sill which plaintiff and Thomas were installing. It is averred in this ground that the plaintiff testified that four men had lifted said sill from the ground, and that the rejected testimony would have tended to impeach plaintiff. We do not think that the manner in which the end-sill was raised to the position whence it was prized up so that it could be mortised to the side-sill was really a material question. Certainly, whether or not four men could have so raised said sill is of little or no moment. We hold that the court did not err in excluding the witness's testimony. In this connection see *Thompson* v. *Thompson*, 77 *Ga.* 692 (7) (3 S. E. 261).

Grounds 5, 6, 7, 10, and 18 complain of the court's refusal to give certain instructions to the jury to the effect that to warrant a recovery the negligence of the defendant must be the proximate cause of the injury. The court having fully and clearly presented to the jury the issues in the case and applied the pertinent law to each issue, we do not think that the instructions requested would have improved the charge given or further enlightened the jury. Especially do we reach this conclusion in view of the fact that none of said requested charges instructs the jury what "proximate cause" is. In the case of *Southern Ry. Co.* v. *Webb*, 116 *Ga.* 152, 154 (42 S. E. 395, 59 L. R. A. 109), the court strongly intimates that it is not an easy matter to arrive at the exact meaning of "proximate cause." In the light of the charge as a whole, we are satisfied that the defendant's case was not hurt by the failure of the court to give said charges, and that the court did not commit reversible error in failing so to do.

Ground 8 complains of the refusal to give the following requested charge: "I charge you that if you believe that plaintiff brought on his alleged injury by his own act in tightening, or attempting to tighten, the nut on the truss-rod, under the conditions and circumstances as shown by the evidence, and that such act amounted to a failure to exercise ordinary care, then there can be no recovery against the defendant in this case." As applied to the evidence in the case and the contentions of the parties, we do not think that the charge requested is as clear and fair as it might be, and we hold that the court did not err in refusing to give it.

Ground 9 complains of the court's refusal to give a charge which was covered by the court's full and fair instructions upon "assumption of risk," and there is no merit in the ground. Ground 10, relating to a requested charge upon proximate cause, has already been passed upon. Ground 11 complains of the refusal to give a charge which was covered by the charge upon "assumption of risk." There is no merit in the ground.

Ground 12 complains of the court's refusal to charge as follows: "I charge you that even if you should find from the evidence that the defendant or plaintiff's coemployee was negligent in any one or all of the specific averments of negligence charged in plaintiff's petition, that nevertheless the plaintiff was under a legal duty to avoid the consequences of defendant's negligence if he could do so

by the exercise of ordinary care, and if he, by the exercise of ordinary care, could have avoided the consequences of defendant's negligence and did not do so, there can be no recovery against the defendant in this case." Under the contentions of the parties and the evidence in this case, the court's charge upon the principle invoked was, to our minds, fuller and fairer than the requested charge. We hold that this ground discloses no reversible error. We are satisfied that the court properly charged the jury in regard to the duty of the plaintiff to exercise ordinary care to avoid the consequences to himself of defendant's negligence, and hold that the trial judge did not commit error in failing to give the requested charge set forth in ground 13.

Ground 14 complains of the court's refusal to charge that "if a danger be obvious and as easily known to the servant as to the master, the master will not be liable for failure to give the servant warning of such danger." Under the peculiar facts and contentions involved in this case, the charge requested is not as appropriate and enlightening as the charge actually given by the court, and the ground discloses no reversible error. Ground 15 complains of the refusal to charge that "if the servant had equal means with the master of discovering unsafe conditions created by the master at the place of work, he can not recover for injuries caused thereby." What was said in regard to the preceding ground is equally applicable to this ground.

Ground 16 complains of failure to give the following requested charge: "Where a servant sues his master for personal injuries, the burden is on the plaintiff to show, not only negligence on the part of the master, but due care on his own part; and before there can be any recovery against the defendant it must appear that the plaintiff did not know, and did not have equal means of knowing, all that which is charged as negligence, and that by the exercise of ordinary care he could not have known thereof." In the first place, we do not like the phrase "all that which is charged as negligence;" and do not consider that the requested charge is perfect. In the second place, we are of the opinion that the principle invoked was sufficiently covered in the court's charge upon "assumption of risk." The ground is not meritorious.

The requested charge set out in ground 17 was sufficiently covered by the court's instructions upon "assumption of risk."

As already indicated, the court did not commit reversible error in failing to give the requested charge upon "proximate cause," as set out in ground 18.

The court's charge upon contradictory statements sufficiently covered the requested charge set out in ground 19.

Ground 20 complains that the court, without request, failed to instruct the jury that no allegation of negligence set forth in the petition could be considered unless it was supported by evidence. The charge given must surely have apprised the jury of the principle embodied in the ground, and we hold that this assignment discloses no error.

It is insisted in ground 21 that the court erred in using the word "every" in the following charge: "Reasonable care or ordinary care means that degree of care which every prudent person would exercise under the same or similar circumstances." The contention is that the true rule is such care as "an ordinarily prudent person" would exercise. The charge was not erroneous for the reason assigned. See Civil Code (1910), § 3471; *White* v. *Knapp,* 31 *Ga. App.* 344 (2) (120 S. E. 796), and cit.

It appears from ground 22 that the judge began his charge upon "decreased earning capacity" by saying that "if the jury should believe that the plaintiff is entitled to recover under the evidence in the case." There is obviously no merit in the assignment that "the jury is nowhere limited to a verdict based on evidence adduced before them."

It is complained that in charging upon the measure of damages for pain and suffering the court failed to instruct the jury to the effect that a verdict "should be predicated on facts adduced in the evidence, and not on their general knowledge of the situation." The charge is not erroneous for the reason assigned, and there is no merit in this (the 23d) ground.

The last ground (number 24) complains that the verdict is excessive. There was evidence of serious injury, decreased earning capacity, and pain and suffering, and we can not say that the verdict for $2500 is excessive.

*Judgment affirmed. Broyles, C. J., concurs. Bloodworth, J., absent on account of illness.*