## 28731.  McDANIEL *v.* RICHARDS.

DECIDED FEBRUARY 24, 1941.  REHEARING DENIED MARCH 26, 1941.

*J. H. Paschall, R. F. Chance,* for plaintiff in error.

*Y. A. Henderson,* contra.

SUTTON, J.   J. S. Richards brought suit against Alton R. Mc-Daniel, to recover damages for injuries sustained by him in a collision between the automobile of the defendant, in which the plaintiff was riding by invitation of the defendant, and an automobile driven by one Tom Hopper Jr.   The wife of the plaintiff and William Brown were likewise riding in the car of the defendant.   The defendant demurred generally to the petition.   This court, in *McDaniel* v. *Richards,* 61 *Ga. App.* 245 (6 S. E. 2d, 383), affirmed a judgment overruling the general demurrer, holding that the case was controlled by the decision in *McDaniel* v. *Brown,* 61 *Ga. App.* 243 (6 S. E. 2d, 382).   The latter case involved a suit by William Brown against McDaniel, for damages arising out of the collision of the two cars above mentioned, Brown having been riding in the car with McDaniel at the latter's invitation.   The records in the two cases show substantially the same allegations with respect to the manner in which the collision occurred, and set out substantially the same grounds of negligence against McDaniel.   It is pertinent, therefore, to quote from the controlling case of *McDaniel* v. *Brown,* supra:   " This case comes to this court on exceptions to the overruling of the demurrer to the petition.   The petition alleged that the plaintiff was riding as a guest in the car belonging to and being driven by the defendant; it was at night and raining, the traffic on the road was very heavy, the road was wet and slippery, and the weather conditions made visibility bad; the defendant was driving at a rate of speed in excess of fifty miles an hour, which at that time, October, 1937, was in excess of the statutory limit; that the defendant was operating said car under such conditions without looking ahead

and in utter disregard for the safety of petitioner and the other guests riding in the car; that at the point where the collision with another car occurred the road was straight for one-half mile or more, and that each car could see the other car coming; that the oncoming car, driven by one Hopper, was in the center of the road, but the road was marked by a yellow line and by looking the defendant could have easily seen and avoided hitting the other car as the road was thirty-one feet wide at that place; that the defendant at the time he was approaching said car driven by Hopper was driving his own car with one hand and was trying to tune his radio to get a ball-game broadcast, and was not looking ahead or at the road, and was directing his entire attention to the tuning of the radio, and was not exercising the slightest care in the driving of the car in view of described conditions of the road at the time; that had the defendant been looking ahead he could have brought his own car to a stop or have driven to his right and avoided striking the car driven by Hopper. The alleged negligence consisted in defendant's failure to look ahead to observe traffic, and especially the car being driven by Hopper; in failing to observe the approach of Hopper's car; in not applying his brakes and bringing his car to a stop; in failing to turn his car to the right to avoid striking Hopper's car; in driving at the rate of fifty miles per hour under such conditions; in fixing his total vision and attention on the radio under such conditions and at such times; that at the time the rate of speed at which the car was being operated was illegal and was negligence per se; and that all of the acts alleged showed the lack of even slight care on the part of the defendant."

The court said: "We think that the principle in *Horton* v. *Sanchez*, 57 *Ga. App.* 612, 618 (195 S. E. 873), taken from *Southern Ry. Co.* v. *Webb*, 116 *Ga.* 152 (42 S. E. 395, 59 L. R. A. 109), is applicable here. We quote: 'While the general rule is that if, subsequently to an original wrongful or negligent act, a new cause has intervened, of itself sufficient to stand as the cause of the misfortune, the former must be considered as too remote, still if the character of the intervening act claimed to break the connection between the original wrongful act and the subsequent injury was such that its probable or natural consequences could reasonably have been anticipated, apprehended, or foreseen by the original wrongdoer, the causal connection is not broken, and the original

wrongdoer is responsible for all of the consequences resulting from the intervening act.' The acts alleged against the defendant, if they were the proximate cause of the injury, were sufficient to authorize a recovery. It is true that, construing the petition most strongly against the pleader, it may be said that Hopper was driving in the center of the road, was therefore over the center line of said road and was thereby negligent, and that except for such negligence of Hopper the accident would not have occurred. However, the petition also alleges that such situation and negligence of Hopper could have and would have been seen and discovered by the defendant except for his failure to keep a lookout ahead, and that if such negligence of Hopper had been discovered it could easily have been avoided. As an example, we may say that had the defendant brought an action against Hopper for any injury he might have sustained on that occasion, and Hopper had been able to show that although he was negligent the defendant could have avoided the result of such negligence after having discovered the same and that he refused to take such action, the defendant could not recover. Likewise, under the present allegations, although Hopper's negligence may have been an immediate cause of the plaintiff's injury, the jury would be authorized to say that the defendant here should have reasonably anticipated or apprehended that his driving as alleged on the occasion and under the circumstances would itself probably result in just such an injury or collision, and therefore as to those to whom he owed a duty he would not be free from liability as a result of the consequences of the intervening act of Hopper. The causal connection between the alleged negligence of the defendant and the injury is not necessarily broken. Such an issue is for the determination of a jury, and the court did not err in overruling the demurrer."

On the trial the jury returned a verdict in favor of the plaintiff. The defendant moved for a new trial on the general grounds, and by amendment added several special grounds hereinafter dealt with. The court overruled the motion, and the exception is to that judgment.

■ While the case was a close one, we think that it was a jury question, under the evidence, as to whether or not the defendant was negligent in the manner in which he was driving his car and in failing to apprehend that his driving as alleged would result in

injury to the plaintiff who was riding with him, and whether or not the causal connection between such negligence and the injury was broken by the intervening act of the driver of the approaching car. As authorizing the verdict in favor of the plaintiff, the following evidence is set forth: The defendant, with the plaintiff, the defendant's wife, and William Brown as his guests, was driving a car south from Dalton, Georgia, on a public highway at night. The road was wet and slippery from rain, and visibility was bad. About one and a half or two miles from Dalton the defendant's car collided with one being driven by Tom Hopper Jr. At the point of collision the road had a shoulder about seven feet wide on the right side and a shoulder about five feet wide on the left side, the total width of the road being about thirty-one feet. The plaintiff was asleep on the back seat, and was unable to testify as to the facts of the collision in which he sustained certain injuries. William Brown was sitting on the front seat with the driver, the defendant, and immediately before the collision was endeavoring to tune in on a radio a football game broadcast. The uncontradicted evidence showed that Tom Hopper was driving without his windshield wiper working, and that he had been unable to see clearly cars which he had met on the highway and had been stopping for them to pass. In approaching the defendant's car he did not see it until within about twenty or thirty feet of it. He was driving at fifteen to twenty miles an hour, and was unable to testify whether he was on the right side of the road or partly on the left. William Brown was not looking at the highway at the time of the collision, being engaged in tuning the defendant's radio, and did not observe the Hopper car until within about twenty or thirty feet from it. He testified, that McDaniel was driving with his left hand at the time of the collision, and just before the impact leaned over to assist Brown in tuning the radio, and at the time was driving at not less than fifty miles an hour; that since the accident he talked with McDaniel, who told him on one occasion that he did not see the Hopper car, that he was driving with one hand and tuning the radio. The witness could not say on what part of the highway McDaniel was driving; if a person were looking ahead he could see about five hundred yards south on the highway where the collision occurred; the road is almost level at that point, and there is no depression which would obstruct the view of a car approach-

ing from the south; the Hopper car had its lights on; the horn on the McDaniel car was not sounded; and at the time there was a yellow center line in the road.

J. S. Richards testified as to his injuries, and that after the collision he asked McDaniel, while they were in a hospital together, if he really knew what happened at the time of the collision, and that McDaniel said, "No; we were trying to get some football game or something, and Junior [William Brown] wasn't making no success in tuning the radio, and I reached over to help him; I was tuning the radio, and some one hollered 'Look out,'" and that McDaniel said that he "raised up in time to see it, but not in time to put on his brakes or to cut his wheels or anything." Two witnesses testified as to going to the scene of the collision immediately after the occurrence and finding the two cars "locked" together on the side of the road on which the McDaniel car was traveling in a southern direction. There was testimony that on the west side of the highway there was a field which was about two and a half feet below the highway, to which a gradual slope from the highway led, and that a car traveling at less than or at forty miles an hour might safely proceed down such incline without turning over.

The defendant testified, that he did not deny talking with Richards in the hospital; that he heard what Richards testified; that as to whether he denied what Richards said, he did not remember just the particulars, did not mean to say that Richards did not swear the truth about the conversation, and would not say that. He testified: "As to whether or not I was driving on my own side of the road that night, well I consider I was on my side. . . After we left Dalton Junior was tuning the radio, getting a ball game. I was watching my driving, but it is possible I was listening for the game. When I first saw the Tom Hopper car it must have been within twenty feet of us. Yes, we met another car just before this, we met one just before the collision. . . I saw the Hopper car immediately after my eyes got over the glare of the first car. . . I don't know where the Hopper car came from. . . As to whether or not I was driving with one hand or both hands, that I don't know. As to whether or not I was tuning the radio or Junior was tuning the radio, I don't know that either, I don't think I was tuning it, though. Yes, it was sprinkling rain at that time. . . I don't know why I couldn't see the Hopper

car before I met the other car. I could have seen it provided it wasn't behind the other car. If he was on the right side of the road, he was behind the other car, and if he wasn't behind it then he was on the wrong side of the road. . . No, I didn't blow my horn, nor did I apply my brakes. I didn't have time to apply my brakes before the collision."

Before the collision the car driven by McDaniel was passed by another car about half a mile back towards Dalton. This car was coming south, and in it were G. L. Jones and Jimmy Jones. Jimmy Jones testified: "When we passed him we were going sixty-five miles an hour, and we didn't slow down any—if anything, got faster, and we were only three hundred and fifty feet ahead of him when the crash came." The car in which the Jones brothers were riding met the car driven by Hopper, shortly before the crash, and turned into a filling-station on the east side of the road after the Hopper car had passed. According to the testimony of Jimmy Jones, the Hopper car was somewhat over the center of the line of the road on their side.

The law of the case, fixed by *McDaniel* v. *Richards*, supra, is that the plaintiff is entitled to recover if the evidence substantially supports the allegations of the petition. While, as contended by counsel for the plaintiff in error, there was no affirmative testimony that McDaniel was not on the proper side of the road, there was evidence from which the jury could draw the inference that he was negligent in not keeping a lookout. The plaintiff, being asleep at the time of the collision, could not testify as to the facts at the time of the collision, but he testified as to certain statements made to him by McDaniel after the collision and while they were together in a hospital. The defendant did not deny that he made such statements, but, on the contrary, testified that he did not mean to say that Richards "did not swear the truth" about that conversation and "would not say that." The jury was authorized to find, not only from the testimony of William Brown but also from the admissions of McDaniel, that immediately before the collision McDaniel leaned over to assist in tuning the radio and was actually engaged in doing so. The jury was further authorized to find from the evidence that at nighttime, with visibility bad, and on a slippery and wet road, traveling at not less than fifty miles an hour, the legal rate of speed being forty miles an hour at that

time, the defendant was not watching the road, but was engaged otherwise, and did not "raise up" from such inattention until he was within twenty or thirty feet from the approaching car. He does not himself affirmatively state that he was watching ahead. The most he says is that he was "watching his driving," and he considers that he was on the right side of the road. He does not show that the Hopper car was close behind one which he claims had just passed him. He does not know "where the Hopper car came from," and on what part of the road it was being driven. He shows no fact which would suggest that he could not reasonably have seen the Hopper car if he had been directing his attention to the road ahead. There was testimony that the lights of the Hopper car were burning, and that at the time a car could have been observed for a distance of several hundred feet down the road. In the manner in which the defendant was driving, it might have been anticipated that his negligence would result in a collision with some approaching car negligently driven. Admittedly he made no attempt to put on brakes. He stated that the collision was unavoidable; but it can not be said as a matter of law that had he put on brakes, even though there had been an impact of the two cars, the injuries sustained by the plaintiff would nevertheless have resulted. Under the ruling in *McDaniel* v. *Richards,* supra, and the facts and circumstances of the present case, the jury was authorized to find that the defendant was negligent, and that the causal connection between the defendant's negligence and the injury sustained by the plaintiff was not broken by the intervening act of Hopper. It follows that the court did not err in overruling the motion for new trial on the general grounds.

■ Ground 4 of the motion complains of the exclusion from evidence of a petition filed by the present plaintiff against Thomas Hopper Jr., and another person, to recover for the injuries sustained while riding in the car with McDaniel; the same having been offered to show inconsistent allegations therein made by Richards with respect to the conduct of McDaniel in the operation of the car, and in which it was sought to show that the sole and proximate cause of his injuries was the negligence of Hopper. The petition containing much matter not material and relevant to the case on trial, having been offered as a whole, without the alleged material and relevant portions being specifically desig-

nated, the court did not err in excluding it. *Ellis* v. *Poe,* 109 *Ga.* 422 (34 S. E. 567); *Tillman* v. *Bomar,* 134 *Ga.* 660 (68 S. E. 504); *Bridges* v. *McFarland,* 143 *Ga.* 581 (3) (85 S. E. 856); *Hall* v. *G. S. & F. Ry. Co.,* 144 *Ga.* 145 (2) (86 S. E. 316). Ground 5 was not approved by the court, and can not be considered. Ground 6 complains that the court erred in permitting a physician to testify that the plaintiff stated to him that headaches, from which he suffered after the injury, were disabling him in his work; it being contended that the testimony was merely hearsay. Inasmuch as the plaintiff had already testified to his injuries and consequent headaches and inability to do all of the work he was capable of doing before being injured, the failure of the court to rule out the testimony objected to was not harmful to the defendant. Ground 7 complains that the court erred in not requiring the plaintiff to answer the question, "After that suit [the one brought by Richards against Tom Hopper Jr., and another] was over, did you ask me about bringing this suit against Alton McDaniel?" An answer, whether in the affirmative or negative, would not have been material to the issue on the trial of the present case. It does not appear that the movant's counsel made any showing to the court as to the purpose for which the answer was sought. Manifestly, if it was desired as a foundation for going into the confidential relationship of attorney and client, the question was improper, and the court did not err for any reason assigned. Ground 8 complains that the court erred in excluding from the jury a written statement purported to have been signed by Jimmy Owens and G. L. Owens, to the effect that at the time their automobile passed the McDaniel car, shortly before the collision, the McDaniel car was traveling about thirty miles an hour, it being contended that such statement tended to impeach their testimony to the effect that McDaniel was driving at a higher rate of speed. In view of the fact that the persons making the statement admitted, on the trial of the case, that they made and signed the written statement and gave it to an investigator, its exclusion was not harmful to the defendant, where the contents of the statement were shown by the oral testimony of these witnesses.

*Judgment affirmed. Stephens, P. J., and Felton, J., concur.*

STEPHENS, P. J., concurring specially. I concur in all of the

rulings but the ruling that the court properly excluded the petition of the plaintiff in another suit growing out of the same cause of action, upon the ground that the petition contained other matter and was offered as a whole. It does not appear that the defendant, when offering the petition in evidence, represented to the court the contents of the allegations in the petition, other than that it appears from the allegations of that petition that the present defendant, McDaniel, "was free from fault; was on his side of the road." There appears in the petition which was offered in evidence, as copied in the motion for new trial, no allegation that the defendant McDaniel was free from fault. It does not appear that the rejected evidence would show any admission by the plaintiff that the defendant McDaniel was not negligent as alleged in the present petition. The court did not err in rejecting the testimony offered.