A03A0945. HYNES et al. v. CAGLE et al.
(590 SE2d 770)

BLACKBURN, Presiding Judge.

In this action for personal injuries, Frank Hynes appeals the trial court's grant of partial summary judgment to Phil Cagle, Phil Cagle Custom Homes, Inc., and Isokern East, Inc., contending that the trial court erred by determining that alleged negligent acts by the defendants were not the proximate cause of injuries to Hynes' shoulder after he suffered a fall. Because Hynes' unilateral decision to walk through a dark room without the removable cast and crutches prescribed by his doctor to treat his broken foot and torn hamstring constituted an intervening act breaking the chain of proximate causation to the defendants, the trial court's grant of summary judgment must be affirmed.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

*Matjoulis v. Integon Gen. Ins. Corp.*[1]

Viewed in the light most favorable to the plaintiff, the record shows that Phil Cagle Custom Homes constructed a home for Hynes,

---

and Isokern East, acting as a subcontractor of Cagle, installed the home's fireplace. Due to allegedly negligent construction of the fireplace, Hynes' home caught fire on January 24, 2000, and, while Hynes was trying to put the fire out, a strong backdraft knocked him down, causing him to break his right foot and tear the hamstring in his left thigh. Due to the hamstring tear, Hynes subsequently began to experience painful spasms in his left leg.

Hynes' doctor prescribed both a removable cast and crutches for his injuries. Hynes' doctor testified that an injury to the right foot and left leg such as Hynes had would cause an inherent instability in the patient until the injuries began to heal, thereby creating a need for crutches. Hynes' doctor further opined that, after approximately two weeks of healing, most people could begin to walk without the crutches. Nevertheless, Hynes' doctor kept him in the cast until approximately March 1, 2000.

Approximately three weeks after his initial accident, on February 11, 2000, Hynes woke up in the middle of the night and decided to walk to the bathroom without his cast or crutches, despite the fact that he had been experiencing periodic muscle spasms in his left leg since his initial injury. Hynes recalled: "I was in bed, and I had gotten up to go into the restroom. And when I came back in, I was walking and I had a real hard spasm in my left leg. And I went to grab the left leg and I fell off balance. And I put my hand up as I was approaching the bed. And from the weight I hit the bed and it just dislocated the right shoulder."

Hynes subsequently sued the defendants in tort, claiming that both his original injuries to his leg and foot and his subsequent injury to his shoulder were caused by the defendants' negligence in installing the fireplace in his home. In response, the defendants filed motions for partial summary judgment regarding Hynes' shoulder injury, contending that it was too attenuated and remote from the original act of alleged negligence to support Hynes' claims. The trial court granted the defendants' motion for partial summary judgment, finding that Hynes' own intervening act broke the chain of causation. Hynes now appeals this ruling.

The trial court ruled appropriately.

> To state a claim against [the defendants, Hynes was] required to show that [the defendants'] negligence was the legal cause of [his shoulder injury], i.e., that [the defendants'] negligence was the cause to which the law attributes [his] injury. [He] must show a legally attributable causal connection between the defendant[s'] conduct and the alleged injury. The inquiry is not whether the defendant[s'] conduct constituted a cause in fact of the injury, but rather

whether the causal connection between that conduct and the injury is too remote for the law to countenance a recovery. In Georgia, questions of negligence and proximate cause are ordinarily reserved for the jury, but in plain and undisputed cases the court may make a determination as a matter of law. A cause which is merely incidental is not the proximate and responsible one. Where the evidence plainly and manifestly shows that the injury was caused by the intervening efficient act of a third person, the defendant[s] cannot be held responsible for having produced the injury, and the question is then one of law for determination by the court, and not one of fact for the jury.

(Punctuation and emphasis omitted.) *Bonard v. Lowe's Home Centers.*[2]

In this case, Hynes failed to prove that the defendants' alleged negligence was the legal cause of his shoulder injury. To the contrary, the injury to Hynes' shoulder is too remote from the allegedly negligent construction of the fireplace for the law to countenance a recovery.

A prior and remote cause [cannot] be made the basis of an action if such remote cause did nothing more than furnish the condition, or give rise to the occasion by which the injury was made possible, if there intervened between such prior or remote cause and the injury a distinct, successive, unrelated, efficient cause of the injury. If no danger existed in the condition except because of the independent cause, such condition was not the proximate cause.

(Punctuation omitted.) *Whitaker v. Jones, McDougald, Smith, Pew Co.*[3]

Here, Hynes' own actions intervened as a "distinct, successive, unrelated, efficient cause of the injury." In spite of (1) the fact that he had been prescribed a removable cast and crutches and (2) his knowledge that he had been experiencing muscle spasms in his left leg, Hynes hobbled to the bathroom without even the crutches to stabilize himself. This intervening act broke the causal chain with the defendants.

---

[2] *Bonard v. Lowe's Home Centers*, 224 Ga. App. 85, 87 (2) (479 SE2d 784) (1996).

[3] *Whitaker v. Jones, McDougald, Smith, Pew Co.*, 69 Ga. App. 711, 715-716 (26 SE2d 545) (1943).

The rule well affirmed by the authorities is that under the law a person is required to anticipate or foresee and guard against what usually happens or is likely to happen; but this rule does not require him to anticipate or foresee and provide against that which is unusual and not likely to happen, or, in other words, that which is only remotely and slightly probable. The general test in such cases is not whether the injurious result or consequence was possible, but whether it was probable; that is, likely to occur according to the usual experience of persons. A wrongdoer [cannot] be held responsible according to occasional experience, but only for a result of consequence which is probable according to the ordinary and usual experience of mankind.

*Whitaker*, supra at 716.

The testimony of plaintiff's treating physician regarding Hynes' fall does not change this result. The precise testimony in question was, after removing objections and surplusage:

Q. In your opinion, was it appropriate for a person who had just had an injury or a fracture to their . . . right foot and then injury to their left hamstring and abductor muscles and was in a cast brace and on crutches to hobble or scurry from the bed to the bathroom and back without the use of any crutches or any support? . . .
A. As I've testified, I think the reason you use crutches early on is primarily for pain and stability and if he's not having that much pain and he feels stable, I don't think it is contra-indicated to discontinue use of crutches.
Q. And also to remove the cast brace as well at night within so short a span of time from injury? . . . barely three weeks after an injury like that?
A. If it's a short distance and they're not having pain, I don't think there is any damage done.

Thus, during his testimony, Hynes' doctor was asked, in a general sense, whether it would be okay for a patient with a fifth metatarsal fracture on the right foot and hamstring and abductor muscle injuries on the left leg to walk without a removable cast or crutches approximately two to three weeks after the initial injury. The doctor replied: "If it's a short distance and [the patient is] not having pain, I don't think there's any damage done." This general answer, however, clearly has no bearing on this case, as it is undisputed that Hynes had been experiencing pain, namely, the spasms in his left leg muscles, for the two weeks following his injuries.

In addition, the doctor's testimony does not raise a jury issue because the physician qualified his final answer by stressing that walking without crutches might be okay "if . . . [the patient is] not having pain." As we read the plaintiff's deposition and the affidavit dated September 28, 2001, he stated that he had not had hamstring spasms before the fireplace incident but did have them periodically between the fireplace incident and the shoulder injury and that when they occurred, "I'll tell you, those things can be painful."

Furthermore, if we read the doctor's answer as an opinion that one should have been able to walk without a problem at the plaintiff's stage of convalescence in this case, it would be tantamount to saying that the plaintiff's muscle spasm and fall should not have happened and were, therefore, unforeseeable. Certainly, if the fall were not foreseeable to the treating physician, it would not be foreseeable to the defendants.

Outside Georgia, the general rule reaches the same result we do. Some intervening causes are regarded as foreseeable (and hence not superseding) even though they could scarcely have been contemplated by any reasonable person in the place of the defendants at the time of his negligent conduct.[4] However, it is apparently not foreseeable that an injured plaintiff will fail to exercise proper care while in an injured condition. The general rule is:

> So also, if the plaintiff's weakened condition or physical disability subjects plaintiff, *while exercising proper care*, to the risk of a fall or some similar mishap, the plaintiff may recover if the accident was one normally to be expected in view of the plaintiff's condition, even though the second accident injures some entirely different part of the body.[5]

When a plaintiff's subsequent injury was due in some part to his own negligence, although the defendants' original negligence was indisputably a cause in fact of the subsequent injury, the defendants' negligence is said not to have been a proximate cause of the subsequent injury.[6]

---

[4] Prosser and Keeton on the Law of Torts, § 44, p. 306 (5th ed. 1984). See, e.g., *Hartnett v. Tripp*, 231 Mass. 382, 384 (121 NE 17) (1918) (plaintiff using crutches but crutches slipped).

[5] (Footnotes omitted; emphasis supplied.) Prosser and Keeton, supra at p. 310.

[6] See *S. S. Kresge Co. v. Kenney*, 86 F2d 651 (D.C. Cir. 1936) (weak and unstable plaintiff got up to get glass of water); *Ault v. Kuiper*, 279 Mich. 1 (271 NW 530) (1937) (ankle sprained in car wreck "turned" while plaintiff walking down stairs; broke both legs); *Sporna v. Kalina*, 184 Minn. 89 (237 NW 841) (1931) (both legs broken by car; having healed enough to walk with a cane, fractured skull while walking down stairs unassisted). See generally Anno. Liability of Person Causing Injury for Aggravation Thereof by Accident, 9 ALR 255 (1920).

For all of the reasons above, the trial court's grant of partial summary judgment is affirmed.

*Judgment affirmed. Andrews, P. J., and Mikell, J., concur. Ellington, J., concurs in the judgment only. Ruffin, P. J., Eldridge and Phipps, JJ., dissent. Johnson, P. J., disqualified.*

RUFFIN, Presiding Judge, dissenting.

Because issues of fact remain as to the defendants' liability for Frank Hynes' shoulder injury, I agree with Judge Eldridge that the trial court's summary judgment ruling should be reversed. I write separately to clarify the basis for my agreement.

The trial court granted partial summary judgment to the defendants after concluding that Hynes proximately caused his own shoulder injury by walking to the bathroom without his crutches or removable foot cast. Specifically, the trial court found that, as a matter of law, Hynes' "own intervening act was the cause of [his] subsequent . . . injury."

I disagree. In assessing whether an intervening act breaks the causal connection between a prior wrongful act and a subsequent injury, we must examine the character of the intervening act.[7] If the probable and natural consequences of the intervening act "could reasonably have been anticipated, apprehended, or foreseen by the original wrong-doer, the causal connection is not broken, and the original wrong-doer is responsible for all of the consequences resulting from the intervening act."[8] Furthermore, a defendant may be liable for injuries if the defendant's "negligence put in operation other causal forces which were the direct, natural, and probable consequences of the defendant's original act."[9]

A causal connection, therefore, may be found between the defendant's actions and subsequent, secondary injuries sustained by the claimant. As explained in the Second Restatement of Torts:

> [i]f the negligent actor is liable for an injury which impairs the physical condition of another's body, the actor is also liable for harm sustained in a subsequent accident which would not have occurred had the other's condition not been impaired, and which is a normal consequence of such impairment.[10]

---

[7] See *Ontario Sewing Machine Co. v. Smith*, 275 Ga. 683, 686 (2) (572 SE2d 533) (2002).

[8] (Punctuation omitted.) Id.

[9] (Punctuation omitted.) *Stern v. Wyatt*, 140 Ga. App. 704, 705 (1) (231 SE2d 519) (1976).

[10] Restatement (Second) of Torts, § 460. See also Prosser and Keeton on the Law of Torts, p. 310 (5th ed. 1984).

The Restatement drafters noted that, if the physically impaired person fails to exercise ordinary care and suffers further injury, the secondary injury "becomes an abnormal consequence," breaking the causal connection.[11] The connection remains intact, however, when the impaired party incurs additional damage while acting reasonably. To highlight this principle, the drafters provided the following illustration:

> Through the negligence of A, a collision occurs in which B's right leg is fractured. B is confined to a hospital for two months. At the end of that time, he is permitted by his surgeon to walk on crutches, and while he is doing so, with all reasonable care, he falls and suffers a fracture of his left arm. A's negligence is a legal cause of the second injury.[12]

In my view, a jury question remains as to whether Hynes' February 11, 2000 fall and resulting shoulder injury were probable and natural consequences of his original injury and the defendants' alleged negligence. The majority finds that Hynes acted unreasonably by walking to the bathroom without his crutches or cast. Hynes' doctor, however, testified that, after two to three weeks of healing, a person with Hynes' injuries could safely walk short distances without the crutches and removable cast "if he's not having that much pain and he feels stable."

I recognize that, in the weeks between his original and subsequent injuries, Hynes had periodic, painful spasms in his left hamstring. But the defendants have pointed to no evidence that Hynes was in any pain when he initially walked to the bathroom on February 11, 2000. And I cannot conclude that his history of periodic spasms necessarily rendered his decision to forgo crutches and cast unreasonable.

"Questions of negligence, diligence, contributory negligence, and proximate cause are peculiarly matters for the jury, and a court should not take the place of the jury in solving them, except in plain and indisputable cases."[13] This is not a plain and indisputable case. Factual questions remain as to whether Hynes exercised ordinary care for his own safety and whether his shoulder injury was a natural consequence of the defendants' alleged prior negligence. Accord-

---

[11] See Restatement (Second) of Torts, § 460, comment b and illustration 2.

[12] Id., illustration 1.

[13] (Punctuation omitted.) *Storer Communications v. Burns*, 195 Ga. App. 230 (393 SE2d 92) (1990).

ingly, I would reverse the trial court's finding that, as a matter of law, Hynes' own actions proximately caused his subsequent injury.[14]

ELDRIDGE, Judge, dissenting.

I must respectfully dissent from the majority in this case, because the facts and law create a matter for jury determination as to the issues of causation, intervening cause by plaintiff's conduct, assumption of risk, and the reasonableness of plaintiff's conduct under the circumstances. This is not such a clear and palpable case that the trial court could resolve on summary adjudication. Frank Hynes sustained subsequent injuries to his right shoulder within 18 days of the initial injury when Hynes fell as the result of a muscle spasm in his left leg, while walking from the bathroom back to bed. Generally, proximate cause is uniquely a jury issue; under the facts of this case a dispute as to material issues of fact makes proximate cause and assumption of risk uniquely jury issues.

Phil Cagle Custom Homes, Inc. built a house for Frank and Ann Marie Hynes, and Isokern East, Inc. sold and directed the installation of the fireplace with a gas starter. On January 24, 2000, an ice storm knocked out electricity so that the furnace was also out; therefore, the plaintiffs used their fireplace and gas starter. Subsequently, smoke came from beneath the fireplace, and Frank Hynes sought to extinguish the subfloor flames by spraying foam down the gas starter keyhole. When this was not enough, Hynes went to the basement, stood on a chair, and removed a vent from the ceiling near the fireplace. A backdraft from the fire knocked him to the floor, causing him to break his right foot, i.e., fracture of the fifth metatarsal, and to suffer a tear of the hamstring-abductor muscle group of the left thigh. Treatment consisted of a removable cast and crutches to assist in reducing the weight on the right foot. Subsequently, he had periodic muscle spasms in his left leg. The use of crutches was to avoid pain to the broken right foot from weight-bearing and to provide added stability until the injuries further healed.

On February 11, 2000, Frank Hynes awoke in the middle of the night and went to the bathroom without using either the removable cast or the crutches. Upon returning to bed, the left leg muscle went into spasm, causing him to fall, and he suffered a shoulder injury, while attempting to catch himself. The shoulder injury required surgical repair.

The exception to the doctrine of intervening proximate cause was

---

[14] See *Stern, supra* (factual question remained as to whether defendant's negligent driving caused death of plaintiff's decedent, who received only minor injuries in initial collision and reached a point of safety on the side of the highway, but was killed by a passing car when he crossed the road to retrieve a piece of paper from his disabled vehicle).

articulated in *Southern R. Co. v. Webb*, 116 Ga. 152 (42 SE 395) (1902), by the Supreme Court of Georgia, holding:

> [w]hile the general rule is that if, subsequently to an original wrongful or negligent act, a new cause has intervened, of itself sufficient to stand as the cause of the misfortune, the former must be considered as too remote, still if the character of the intervening act claimed to break the connection between the original wrongful act and the subsequent injury was such that its probable or natural consequences could reasonably have been anticipated, apprehended, or foreseen by the original wrong-doer, the causal connection is not broken, and the original wrong-doer is responsible for all of the consequences resulting from the intervening act.

Id. at 152, hn. 1; accord *Williams v. Grier*, 196 Ga. 327, 337 (2) (26 SE2d 698) (1943). Where there is no intervening negligence of a third party and it is the conduct of the plaintiff in question as to causation of his injuries:

> [t]he inquiry is not whether if [the plaintiff] had not acted in the manner that [he] did the injury complained of would not have occurred, but is whether [his] acts were negligent and if so, whether they were or were not a contributing cause, or whether they were the sole proximate cause. If [his] acts in the transaction . . . were not negligent, i.e. if [he] acted just as an ordinary prudent person would have acted under similar circumstances, [his] conduct is to be considered only as a part of the normal course of human affairs. It matters not so much where the accident happened, as it does how and why the accident occurred at the place it did occur.

(Citation, punctuation and emphasis omitted.) *Storer Communications v. Burns*, 195 Ga. App. 230, 231 (393 SE2d 92) (1990). Such exception to the doctrine of intervening proximate cause controls the analysis under the facts and circumstances of this case where plaintiff alleges that his initial injuries caused him to subsequently suffer a new injury when he fell. While the trial court carefully excluded plaintiff's *nonuse of his crutches and soft cast as negligence*, the court nonetheless found such nonuse to be the sole proximate cause of the subsequent fall, which is a jury issue. Id.

> The rule that an intervening act may break the causal connection between an original act of negligence and injury to another is not applicable if the nature of such intervening act was such that it could have reasonably been anticipated

or foreseen by the original wrongdoer. It is not necessary that an original wrongdoer shall anticipate or foresee the details of a possible injury that may result from his negligence. It is sufficient if he should anticipate from the nature and character of the negligent act committed by him that injury might result as a natural and reasonable consequence of his negligence. In order that a party may be liable in negligence, it is not necessary that he should have contemplated or even been able to anticipate the particular consequences which ensued, or the precise injuries sustained by the plaintiff. It is sufficient, if, by [the] exercise of reasonable care, the defendant might have foreseen that some injury would result from his act or omission, or that consequences of a generally injurious nature might have been expected.

(Citations and punctuation omitted.) *Atlanta Gas Light Co. v. Mills*, 78 Ga. App. 690, 696 (51 SE2d 705) (1949).

There was foreseeability that plaintiff could fall from his prior injuries, going to the bathroom in the middle of the night, and defendants' alleged earlier negligently caused injuries were the triggering cause of the subsequent injury to the plaintiff. See *Southern R. Co. v. Webb*, supra at 152 (1). Further, plaintiff's conduct and injury were reasonably foreseeable as a consequence of his initial injuries, because the necessity for a 52-year-old male with hypertension, i.e., diuretic high blood pressure medication probable, having to get up and to relieve himself in the middle of the night is highly probable so that it was foreseeable by the defendants at the time of the tort. *Storer Communications v. Burns*, supra at 231. In short, the muscle spasm and fall had a causal relationship to the prior injuries. "The principle of remoteness is applicable to situations where an intervening agency, such as the negligence of another, preponderates in causing the plaintiff's injury." (Citation omitted.) *Gen. Motors Corp. v. Davis*, 141 Ga. App. 495, 497 (3) (233 SE2d 825) (1977) (the product failure was reasonably foreseeable in that it would cause the driver to stop in traffic and be rear-ended).

Here, the record is devoid of evidence that plaintiff would not have fallen when the left leg muscle spasm occurred if he had used his crutches and soft cast. In fact, the reasonable inference that a jury may draw is to the contrary that, even using the crutches and the soft cast, the muscle spasm in his less injured leg would still have caused plaintiff's fall, in any event, because he literally had no leg to stand on. Plaintiff would have been balancing on crutches, when his least injured left leg went into muscle spasm and when he could not put supporting weight on his broken right foot. For the plaintiff to be the sole proximate cause of his subsequent injuries, his conduct must

have been unrelated and unaffected by his prior injuries inflicted by the defendants' negligence. See *Storer Communications v. Burns*, supra at 231. Would plaintiff have had a left leg muscle spasm causing him to fall, but for his earlier injuries, because he could not support himself on his broken right foot? Obviously not. See generally *Jacobs v. Taylor*, 190 Ga. App. 520, 526 (1) (c) (379 SE2d 563) (1989) (a negligent failure to control action against psychiatrists: " '[T]he injury was just as likely to have ensued (with only its details somewhat varied, perhaps) if the negligent thing had not occurred. . . .' [Cit.]"). If plaintiff had used his soft cast on his right foot and used the crutches, then would he have had the spasm in his left leg? And if he still would have had the spasm in his less injured left leg, then could the crutches have kept him from falling with the spasm in the left leg? This is for the jury to answer. Indeed, plaintiff's treating physician was of the opinion that it was appropriate for the plaintiff to walk after two weeks without using the crutches or the soft cast.

I am authorized to state that Judge Phipps joins in this dissent.

DECIDED NOVEMBER 26, 2003 — 

*Andrew, Merritt, Reilly & Smith, Mark Merritt*, for appellants.
*Misner, Scott & Martin, Bobby B. Terry, Hall, Booth, Smith & Slover, Roger S. Sumrall, Francis C. Schenck*, for appellees.