**THIRD DIVISION
DOYLE, P. J.,
HODGES and WATKINS, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**October 23, 2024**

# In the Court of Appeals of Georgia

A24A0783. WILLIS v. COWABUNGA, INC. et al.

DOYLE, Presiding Judge.

Jeanette Willis appeals from the grant of partial summary judgment to Cowabunga, Inc., d/b/a Domino's Pizza ("Domino's") and its driver, Christopher Geanis, in her personal injury action against them arising from an automobile collision allegedly caused by Geanis during his employment with Domino's. Willis contends that the trial court erred by ruling that there is no genuine issue of material fact as to whether injuries to her left foot and ankle were causally related to her injuries from the collision. Because the evidence of record, when viewed in favor of nonmovant Willis,

supports an inference that those injuries were causally related, we reverse the grant of summary judgment as to that issue.[1]

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[2]

---

[1] The trial court did not rule on related arguments with respect to injuries to Willis's back, and it explicitly declined to rule on any other remaining motions. Accordingly, we do not address those issues. See *Pneumo Abex, LLC v. Long*, 357 Ga. App. 17, 29 (2) (849 SE2d 746) (2020) ("[T]his is a Court for the correction of errors of law, and if the trial court has not ruled on an issue, we will not address it. . . . [W]ithout a ruling by the trial court on a particular issue, there is nothing for this Court to review upon appeal.") (punctuation omitted).

[2] (Citation omitted.) *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

So viewed, the relevant record[3] shows that on April 20, 2016, Willis was the rear seat passenger of a motorcycle operated by her boyfriend, Scott Berrow. While they were stopped on a two-lane road waiting in a line of other vehicles, they were hit from behind by a vehicle driven by Geanis as he reached for some cigarettes that had fallen onto the floor of his car. Berrow and Willis were launched into the air, with Willis tumbling head over heels several times before coming to a stop. They both sustained several injuries, but most relevant to this appeal, Willis broke multiple bones in her right foot and ankle. She was taken to Grady Hospital, treated and stabilized, and discharged with instructions to see a specialist for her right foot and ankle injuries.

---

[3] Willis's initial notice of appeal specified that only certain portions of the record be transmitted to this Court. For purposes of this appeal, we need rely only on depositions and other evidence named in that notice of appeal, which evidence was before the trial court when it ruled and was relied on by the defendants in their summary judgment motion. The legal issues in this appeal are controlled by testimony in two depositions identified by Willis's initial notice of appeal and transmitted to this Court: Willis's deposition taken on June 21, 2022 (filed in the trial court on June 21, 2022), and Dr. Gary Stewart's deposition taken on June 20, 2019 (filed in the trial court on December 21, 2023). It appears that Stewart's full deposition was not formally filed in the trial court until after the trial court ruled (primarily in reliance on an excerpt of the Stewart deposition), but it is undisputed that the relevant portions of the depositions were before the trial court and explicitly relied upon by the trial court without objection by either party. Thus, the record as it appears in this Court allows us to review the merits of the parties' substantive arguments.

Willis's primary care physician directed her to another doctor who recommended an MRI. Based on that information, Willis was referred to Dr. Gary Stewart, who first saw Willis in June 2016. Stewart recommended stabilization with an Aircast boot and treatment without surgery. In a follow-up visit in August 2016, an x-ray scan showed that the bone healing was progressing, but Willis continued to have pain in her foot and ankle. By October 2016, Willis was prescribed an orthotic insert and shoe, her healing was progressing, and she was expected to resume at least partial duties at work as a mail carrier by early December 2016.

On December 6, 2016, Willis presented to Dr. Stewart's office with an injury to her *left* ankle, due to a fall on the staircase at home. The left ankle had not been significantly injured in the motorcycle collision. The notes from the December 6 visit indicate that the bones in her right foot and ankle would have healed by that time, but Willis consistently had reported continued pain and decreased range of motion in her right ankle. Willis deposed that she fell on a staircase at home because she was favoring her right ankle at the time.

The following month, in January 2017, Willis continued to report ankle pain and tenderness in her right ankle ligaments. Her pain continued in the ensuing months, but

an MRI taken in early 2017 showed no ligaments that could be surgically repaired by Dr. Stewart. At a visit in April 2017, Dr. Stewart informed Willis that her chronic right ankle pain was "likely going to be her new normal." With respect to her left ankle, Willis continued to have pain and in 2021, had surgery to repair a torn tendon in her left ankle due to the fall.

Willis sued Domino's and Geanis to recover damages based on her injuries. Following discovery, the defendants moved for partial summary judgment as to any injuries to Willis's left ankle (arguing that they were caused by the fall and not the motorcycle collision) and her back (arguing that any back-related symptoms were due to an unrelated wreck in 2011).[4] Willis opposed the motion, and following a hearing, the trial court granted the motion. The order did not address any injuries to Willis's back, but with respect to her left ankle injury, the trial court ruled that the undisputed evidence showed that it was not caused by the motorcycle wreck because her right

---

[4] The defendants also filed a motion pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U. S. 579 (113 SCt 2786, 125 LE2d 469) (1993), to exclude the testimony of one of Willis's experts, but that motion was denied as moot by the trial court.

ankle "bones were completely healed" by the time of her fall on the staircase. Willis now appeals.[5]

1. Willis contends that the trial court erred by granting partial summary judgment to the defendants as to her left ankle injury because issues of fact remain as to whether her right ankle had healed, and because the causation question was appropriately left for the jury based on this record. We agree.

As a threshold matter, it is important to highlight the standard of review.

> At the summary judgment stage, the trial court, as well as this Court on appeal, must view all of the evidence in the light most favorable to the nonmovant. . . . When addressing summary judgment motions, every court must remain mindful of the jury's role in the process to resolve any and all conflicts in the evidence. It is the jury, not the court, which is the

---

[5] As a matter of statutory law, orders granting partial summary judgment to a party are directly appealable. See OCGA § 9-11-56 (h); *City of Demorest v. Town of Mount Airy*, 282 Ga. 653, 654, n. 1 (653 SE2d 43) (2007). Willis did not immediately appeal from the summary judgment order, but she instead filed this appeal pursuant to the denial of her motion for reconsideration of the summary judgment order, after obtaining a certificate of immediate review and the grant of her application for interlocutory appeal in this Court. See OCGA § 5-6-34 (b); *Mayor & Aldermen of City of Savannah v. Norman J. Bass Constr. Co.*, 264 Ga. 16, 17 (1) (441 SE2d 63) (1994) ("[W]e hold that an order denying a motion for reconsideration is an interlocutory order that, just as any other interlocutory order, can be the subject of an application for interlocutory appeal if a certificate of immediate review is obtained from the trial court.").

fact-finding body. The jury weighs the contradictory evidence and inferences, judges the credibility of witnesses, receives expert instructions, and draws the ultimate conclusion as to the facts. . . . For this reason, at the summary judgment stage, courts are required to construe the evidence most favorably towards the nonmoving party, who is given the benefit of all reasonable doubts and possible inferences.[6]

Further, "ordinary questions of negligence and causation are peculiarly questions for the jury except in clear, plain, palpable, and undisputed cases."[7]

Here, the trial court focused on two pieces of evidence: Willis's account of her fall (and description of the status of her right ankle) and Dr. Stewart's deposition and notes from his treatment of Willis in December 2016. First, with respect to Dr. Stewart's testimony, the trial court's order stated, "Her treating physician stated in his notes and deposition her bones were completely healed at the last appointment in October 2016." Based on this, "the [c]ourt finds during the time of healing, approximately six months, [Willis] had the ability of traversing the stairs of her home . . . without injury." But Dr. Stewart's deposition testimony states that in October

---

[6] (Citations and punctuation omitted.) *Smith v. Tenet HealthSystem Spalding*, 327 Ga. App. 878, 879 (1) (761 SE2d 409) (2014).

[7] (Punctuation omitted.) *Tarver v. Sigouin*, 360 Ga. App. 627, 630 (1) (860 SE2d 179) (2021).

2016, he expected Willis to be able to return to some form of work duties in December. If anything, this is evidence that she was not "completely healed in October," as found by the trial court. Further, and more importantly, Dr. Stewart's deposition testimony repeatedly clarified that the healing referred to by the trial court and defendants was "the bones," "from the bones," and "bone-wise." Thus, the healing addressed in this testimony was limited explicitly to the bones in Willis's right ankle, and Dr. Stewart never stated that the right ankle joint function or soft tissue such as ligaments and tendons were back to baseline in December 2016. This is consistent with Dr. Stewart's testimony that in January 2017, Willis continued to have right ankle pain , and by April 2017, Willis's chronic pain and inflammation in the right ankle were "likely going to be her new normal." This testimony supports an inference that Willis did not have full function of the right ankle when she fell and that Willis would have been favoring her right ankle as stated. Thus, rather than construing Dr. Stewart's deposition testimony in favor of nonmovant Willis, the trial court construed it against her, ignored the evidence of persistent soft tissue injury and chronic pain, and deemed her right ankle completely healed based on Dr. Stewart's narrow reference to the healing in Willis's bones.

Similarly, with respect to Willis's description of her fall and right ankle condition, the trial court focused on what it deemed to be inconsistencies between her December 2018 deposition[8] and June 2022 affidavit.[9] In the 2022 affidavit, Willis stated that the December 2016 fall was caused "when my right foot gave way. I lost my balance. . . ." In her 2018 deposition, Willis gave the following description:

> Dealing with my [right] ankle, I tried to shift my weight to keep it off the bad ankle. And as I was walking, I don't know whether I tripped trying to keep the weight [sic] because I try not to put a lot of weight on my right side. And all of a sudden I just start, I kind of fell over because when I was shifting to the, my weight to the left side, I just lost my balance, and I fell; and I hurt my left ankle.
>
> . . .
>
> Because of this ankle I guess I'm, I wasn't trying to put all the weight on the right ankle all the time. And I shift my weight to keep the weight off my right ankle a lot, and that's when I had the fall.

---

[8] The deposition was taken on December 19, 2018. The trial court appears to have referred mistakenly to the deposition as taken in December 2019.

[9] Willis's June 2022 affidavit was filed in May 2023, as part of her response to the defendants' motion for partial summary judgment.

Willis explained in a 2022 affidavit that she was only able to ascend or descend steps one step at a time, standing sideways, and that this was what she was doing when she fell.[10]

The trial court deemed the deposition's vagueness and uncertainty to be inconsistent with the assertion in the affidavit that her "right foot gave way. I lost my balance. . . ." Accordingly, citing the rule in *Prophecy Corp. v. Rossignol*,[11] the court construed the evidence against her and concluded that her right foot and ankle were completely healed and therefore could not have caused the fall injuring her left ankle. But as noted in *Prophecy*, testimony "is contradictory if one part of the testimony asserts or expresses *the opposite* of another part of the testimony."[12] Willis's deposition testimony is unequivocal that she was favoring her right ankle, and that this hampered the process of traversing stairs. It is true that her description of the moment she fell

---

[10] Nothing in this description of navigating stairs is contradictory to her 2018 deposition.

[11] 256 Ga. 27, 28 (1) (343 SE2d 680) (1986) ("The rule in Georgia is that the testimony of a party who offers himself as a witness in his own behalf at trial is to be construed most strongly against him when it is self-contradictory, vague or equivocal.") (punctuation omitted).

[12] (Emphasis supplied.) Id. at 30 (2).

was somewhat vague: "I don't know whether I tripped trying to keep the weight [off the right side] . . . when I was shifting . . . my weight to the left side . . . I just lost my balance, and I fell." But nothing in the later affidavit contradicts the basic premise of the fall — that she was favoring the right ankle to accommodate the chronic pain and lack of function in her right ankle.[13] Stating that "my right foot gave way. I lost my balance. . . ." is not inconsistent with her description of losing balance when shifting weight off of the compromised right ankle. The affidavit was not a denial or the opposite of her prior testimony such that it warranted being construed against her. Instead, the affidavit and deposition, taken with evidence from Dr. Stewart that Willis had not "completely healed," support an inference that favoring her right ankle caused her to fall and injure her left.

Finally, we note that the interval between the April 2016 wreck, which caused the right ankle injury, and the December 2016 fall, resulting in the left ankle injury,

---

[13] See generally *Thompson v. Ezor*, 272 Ga. 849, 851 (1) (536 SE2d 749) (2000) ("The *Prophecy* rule requires trial courts, when considering summary judgment motions, to (1) eliminate all portions of a party's self-contradictory testimony that are favorable to, and left unexplained by, that party; and (2) consider the remaining evidence in favor of the party opposing summary judgment. Under *Prophecy*, it is only in situations where the favorable portion of a party's self-contradictory testimony is the only evidence of his right to recover . . . that the opposing party is entitled to summary judgment.") (citation omitted).

was not so long as to sever the causal relationship as a matter of law.[14] And there is evidence that Willis was using her right ankle as recommended by her treating physicians, who had advised her to slowly progress from crutches and a stabilizing boot to walking unaided. Thus, her decision to walk unaided was not in violation of medical recommendations nor was it conclusive, as a matter of law, that Willis failed to care for her own safety.[15]

> At this stage in the proceeding, it is precisely because there are bits of evidence in the record which create genuine issues of material fact that summary judgment is not appropriate . It is not the role of courts, but is the role of a jury to sort through the evidence, resolve conflicts, and make findings of fact based on the evidence it finds credible.[16]

---

[14] See generally *Johnson v. Avis Rent A Car System, LLC*, 311 Ga. 588, 593 (858 SE2d 23) (2021) ("The requirement of proximate cause constitutes a limit on legal liability; it is a policy decision that, for a variety of reasons, e.g., intervening act, the defendant's conduct and the plaintiff's injury are too remote for the law to countenance recovery.").

[15] Compare *Hynes v. Cagle*, 264 Ga. App. 367, 371 (590 SE2d 770) (2003) ("When a plaintiff's subsequent injury was due in some part to his own negligence, although the defendants' original negligence was indisputably a cause in fact of the subsequent injury, the defendants' negligence is said not to have been a proximate cause of the subsequent injury.") (citation omitted) (physical precedent only).

[16] (Citation and punctuation omitted.) *Tarver*, 360 Ga. App. at 632 (1) (a).

Further,

> [t]he concept of proximate cause includes all of the natural and probable consequences of the tortfeasor's negligence, unless there is a sufficient and independent intervening cause. Generally, if, subsequently to an original wrongful act, a new cause has intervened, of itself sufficient to stand as the cause of the misfortune, the former must be considered as too remote[.] [But] if the character of the intervening act was such that its probable or natural consequences could reasonably have been foreseen by the original wrong-doer, the causal connection is not broken.[17]

Because a rational trier of fact could conclude that it is foreseeable that favoring an injured foot can lead to instability and subsequent falls, and in light of the evidence that Willis had not regained the normal use of her right foot and ankle at the time of the injury, the record presents a jury question as to the proximate cause of the left ankle injury.[18] Accordingly, the trial court erred by construing the evidence against

---

[17] (Citations and punctuation omitted.) *Drucker v. Morgan*, 371 Ga. App. 334, 339 (3) (900 SE2d 204) (2024).

[18] See *Hayes v. Crawford*, 317 Ga. App. 75, 79 (730 SE2d 26) (2012) ("[E]xcept in plain, palpable, and indisputable cases," questions regarding who proximately caused an injury should be resolved by the jury.) (punctuation omitted). See generally Restatement Second of Torts § 460 ("If the negligent actor is liable for an injury which impairs the physical condition of another's body, the actor is also liable for harm sustained in a subsequent accident which would not have occurred had the

Willis and granting partial summary judgment to the defendants as to her left ankle injury.

2. The trial court explicitly did not rule on any other pending motions, nor did it address the defendants' motion for summary judgment with respect to injuries to Willis's back. Accordingly, those questions present nothing for us to review.

*Judgment reversed. Hodges and Watkins, JJ., concur.*

---

other's condition not been impaired, and which is a normal consequence of such impairment.").

14